UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL WILFERTH,

                                    Plaintiff,

                                                        DECISION AND ORDER

                                                        13-CV-6235L

                    v.

CAROLYN W. COLVIN,

                                    Defendant.
_____

## INTRODUCTION

Daniel Allen Wilferth ("plaintiff") brings this action under 42 U.S.C. § 405(g) of the Social Securities Act, seeking review of a final decision of the Commissioner which denied his applications for social security disability and disability insurance benefits.  Specifically, plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), Hortensia Haaversen, denying his application for benefits, was not supported by substantial evidence.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on the grounds that the ALJ committed reversible error by failing to follow the treating physician rule and by failing to classify plaintiff's chronic obstructive pulmonary disease ("COPD") as a severe impairment.  (Dkt. #8).  The Commissioner cross-moves for judgment on the pleadings.  (Dkt. #10).  For the reasons set forth below, I find that the ALJ's decision is supported by substantial evidence, and is in accordance with applicable law.

**FACTUAL BACKGROUND**

On October 8, 2010, plaintiff, then 47 years old, applied for disability insurance benefits under Title II of the Act, claiming disability since August 24, 2010, due to back pain, drug addiction, depression, diabetes, hypertension, and high cholesterol.  (Transcript of Administrative Proceedings, hereinafter "Tr.," at 192).  On November 8, 2010, plaintiff filed an application for supplemental security income benefits under Title XVI of the Act.  (Tr. at 188-190).  Both applications were denied on February 7, 2011.  (Tr. at 83-90).

Plaintiff requested a hearing, which was held via video-conference on February 6, 2012 before Administrative Law Judge ("ALJ") Hortensia Haaversen.  (Tr. at 51-73).  By decision dated April 12, 2012, the ALJ determined that plaintiff was not disabled.  (Tr. at 11-23).  That decision became the final decision of the Commissioner when the Social Security Appeals Council denied plaintiff's request for review on March 16, 2013.  (Tr. at 1-6).  This action followed.

**DISCUSSION**

**I.      Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants district courts jurisdiction to hear claims based on the denial of social security benefits. 42 U.S.C. § 405(g).  However, "[i]t is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  Rather, the Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence.  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence is defined as, "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## II.     The Five-Step Evaluation

The ALJ's decision follows the Administration's five-step sequential evaluation for determining whether an individual is disabled. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. § 404.1520; see also 20 C.F.R. § 404.1560.   At step one, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment activity. *Id*. § 404.1520(b).   At step two, the ALJ examines whether the claimant has a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities. *Id*. § 404.1520(c).   If so, the ALJ then proceeds to step three, which considers whether, based solely on medical evidence, plaintiff's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. § 404.1520(d).   If it does, the claimant is disabled.   If it does not, the analysis continues to step four, determining the claimant's residual functional capacity ("RFC"), which is his ability to perform physical or mental work activities on a sustained basis, and considering whether the claimant's RFC allows him to perform the requirements of his past work. *Id*. § 404.1520(e),(f).   If the claimant can return to his past work, he is not disabled.   If the claimant is unable to perform his past work, the ALJ moves to step five, and determines whether the claimant can perform other substantial gainful work that exists in the national economy. *Id*. § 404.1520(g).

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.   (Tr. at 12-13).     She further concluded that plaintiff's combined impairments, including depressive disorder, opioid dependence with recent relapse, diabetes, hypercholesterolemia, hypertension, and lumbar stenosis, were severe within the meaning of the

regulations, but were not severe enough to meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 13-14).

At steps four and five, the ALJ concluded that plaintiff could not perform the requirements of his past work, but retained the RFC to perform the physical requirements of sedentary work, except that plaintiff could lift ten pounds occasionally, and one to three pounds frequently; walk or stand for two hours; sit from six to eight hours; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally kneel, stoop, crouch or crawl; and limited to simple, routine tasks in a low stress environment with occasional changes in the work setting and occasional decision making. (Tr. 16). *Id.* §404.1567(a).

At the hearing, vocational expert Dr. Pat Green testified that an individual with plaintiff's RFC could perform the positions of order clerk, of which there were 2,800 jobs regionally; dresser, of which there were 3,000 jobs regionally; and sorter, of which there were 2,500 jobs regionally. (Tr. at 22, 69-71). The ALJ accordingly concluded that plaintiff was not disabled. (Tr. at 22).

### A.    The Treating Physician Rule.

It is well-settled that, "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). If the treating physician's opinion is not well supported by medical findings, or is inconsistent with other substantial evidence in the record, the ALJ may decline to give it controlling weight. 20 C.F.R. § 404.1527.

In determining what weight to give a treating physician's opinion, the factors considered by the ALJ include: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the

opinion is consistent with the record as a whole; and (5) whether the opinion is offered by a specialist.  *Id.* § 404.1527(d).  Furthermore, the ALJ must articulate his or her reasons for assigning differing weight to both treating and non-treating physicians' opinions.  *See id.* § 404.1527(e)(2)(ii) (where the treating source is not given controlling weight, "the [ALJ] must explain in the decision the weight given to the opinions of [consulting or non-examining physicians], as the [ALJ] must do for any opinions from treating sources...").

Initially, plaintiff contends that the ALJ failed to follow the treating physician rule when she accorded the opinions of plaintiff's treating physician, Dr. Eddy Laroche, only "little weight," instead of controlling weight.  (Tr. at 21).  In so doing, the ALJ reasoned that Dr. Laroche's opinions – particularly to the extent that they were based on his treatment of plaintiff's depression and/or spinal stenosis – were "outside his area of expertise" as a general practitioner, and were unsupported by objective testing.  (Tr. at 21).  Plaintiff reasons that specialization in a particular medical field is only one factor for the ALJ to consider when assigning weight, and argues that objective tests of plaintiff's spine, which show varying levels of stenosis (narrowing of the spinal canal) offer at least some objective support to Dr. Laroche's opinion that plaintiff was "100 percent disabled."  (Tr. 295).

Based on the information in the record, I find that the ALJ properly weighed Dr. Laroche's opinions, and adequately explained her reasons for declining to grant controlling weight to his conclusion that plaintiff was entirely disabled from working.  As the ALJ noted, Dr. Laroche's opinions are inconsistent with other opinions in the record, as well as statements made by the plaintiff himself, and none of the objective test records, including those showing mild to moderate spinal stenosis, indicate a level of disability greater than that reflected in the plaintiff's RFC, as determined by the ALJ.  (Tr. at 21).

First, Dr. Laroche's statements that plaintiff was disabled, which were made at the conclusion of various treatment records and are wholly without explanation, elaboration or reference to any of plaintiff's particular diagnoses (Tr. at 295, 416, 417, 420, 422), are inconsistent with opinions of consulting and examining physicians, all but one of whom found that plaintiff's mental and physical functional capacities were consistent with sedentary work, performed in simple tasks and at a low stress level.  (Tr. 362, 367-368, 401).  To the extent that consultative specialist Dr. Seth Zeidman, opined on February 3, 2011 that plaintiff was "temporarily totally disabled" due to spinal degeneration pending surgery (Tr. 406), the basis for that conclusion is unclear: in the preceding examination record, Dr. Zeidman found that notwithstanding the disc degeneration shown on plaintiff's CT myelogram, plaintiff's mental status, physical strength and muscle tone were normal.  (Tr. 404-406).  Indeed, Dr. Zeidman's opinion, like Dr. Laroche's, does not specify any particular limitation on plaintiff's capacity: it is no more than a conclusory opinion on the ultimate issue of disability, which is unquestionably a matter "reserved for the Commissioner."  *Taylor v. Barnhart*, 83 Fed. Appx. 347 at 349 (2d Cir. 2003) (treating physician's opinion that claimant is "temporarily totally disabled" is entitled to no weight, because the ultimate issue is reserved solely for the Commissioner) (citing 20 C.F.R. §404.1527(e)(1)) (unpublished opinion).

The ALJ's decision to give little weight to Laroche's opinion, as well as her apparent rejection of Zeidman's opinion that plaintiff was disabled, is further supported by plaintiff's self-reports of his activities, which describe activity consistent with the RFC determined by the ALJ. Plaintiff testified during his February 6, 2012 hearing that on a typical day he cleans the house, has no trouble getting dressed or bathed, and goes for a walk around the block.  (Tr. at 60-61).  Plaintiff also completed an activities of daily living questionnaire wherein he stated that he performs light household chores, prepares meals on a weekly basis, washes dishes and laundry, drives his car and

grocery shops, and is capable of walking up to 100 yards, lifting up to 10 pounds, using his hands without limitation, following instructions, and complying with directives from supervisors.  (Tr. at 209-212, 215-216).  Such activities and capabilities are inconsistent with plaintiff's claim of total disability.

The ALJ considered the appropriate factors and explained in detail the bases for her decision not to grant controlling weight Dr. Laroche's conclusory statements that plaintiff was totally disabled, as well as her apparent rejection of Dr. Zeidman's similarly conclusory findings.  I find no reason to disturb her determination.

### B.    COPD and Plaintiff's RFC

Plaintiff also contends that the ALJ erred in failing to find that plaintiff's COPD was a "severe" impairment.  Plaintiff argues that because the ALJ based this conclusion, in part, on the fact that plaintiff smoked cigarettes, her conclusion that plaintiff's COPD was not severe was in error. (Dkt. #8).  Plaintiff reasons that because of the "addictive nature of [tobacco] products," his continued use of cigarettes should not be detrimental to the ALJ's decision regarding the severity of his COPD.  *See Riechl v. Barnhart*, 2003 WL 21730126 at *13 (W.D.N.Y. 2003).

Regardless of whether plaintiff smoked, it was the absence of evidence supporting COPD-related impairments, and not plaintiff's smoking, that was dispositive in the ALJ's determination.  There is no evidence whatsoever that the plaintiff's COPD had some affect on his RFC for which the ALJ failed to account.  Plaintiff reported no chest pain, shortness of breath, nor dyspnea on exertion.  (Tr. at 14).  Plaintiff's treatment records consistently reflect that his lungs sounded clear, with neither wheezing nor shortness of breath, and that his respiratory rate was normal. (Tr. at 315, 318, 319, 320, 321, 322, 323, 324, 325, 333).  In short, there is no evidence that COPD affected plaintiff's RFC, nor that the ALJ erred by failing to characterize it as a "severe" impairment.

7

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. #8) is

denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #10) is granted.

The ALJ's decision is affirmed in its entirety, and the Complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        October 1, 2014.